IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| KHASHAYAR HAKIMIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PENTWATER CAPITAL MANAGEMENT LP and MATTHEW HALBOWER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Khashayar Hakimian ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, Pentwater Capital Management LP and Matthew Halbower ("Defendants"), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Avis Budget Group, Inc. ("Avis" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial,

additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Avis securities (including those who bought Avis common stock to cover a short position) between February 20, 2025 and April 21, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 9(a) and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by Pentwater Capital Management LP ("Pentwater") and its Chief Executive Officer ("CEO") and Chief Investment Officer ("CIO") Matthew Halbower.

2.      This case involves a scheme to manipulate the market for Avis securities, orchestrated by Defendants Pentwater and Halbower.  Taking advantage of Pentwater's position as one of Avis's largest shareholders, holding a total economic interest of approximately 51% of the Company through stocks and cash-settled swaps as of March 2026, Defendants' aggressive purchasing of Avis stock during the Class Period triggered unusual volatility and a short squeeze in the market for Avis securities – *i.e.*, a rapid surge in the Company's

stock price caused by short sellers buying back shares to cut their losses, thereby fueling further price spikes – all of which served to greatly increase the value of Pentwater's holdings of Avis stock.

3.      Between April 1 and April 22, 2026, the market price of Avis common stock climbed dramatically, after trading below $200 per share for the majority of the preceding twelve months and despite the disappointing full-year 2025 financial results Avis had recently released.  Avis's stock price reached a staggering high of $765.94 per share during intraday trading on April 21, an increase of approximately 419% over its $147.52 opening price on April 1, before closing at $713.97 per share.  Then, over the following trading sessions, Avis's share price collapsed by *74.51%*, closing at $182.005 per share on April 28, 2026.

4.      One day later, during an April 29, 2026 earnings call, Avis CEO Brian Choi told investors that Pentwater had sold 4.3 million shares of Avis stock between April 22 and 23, 2026, for sales proceeds of *$1.75 billion*.  Dumping Pentwater's Avis holdings into the market during such a short period of time caused Avis's share price to plunge, damaging investors.

5.      On June 18, 2026, Avis disclosed in a filing with the SEC that Pentwater had agreed to pay Avis $650 million to settle alleged violations of Section 16(b) of the Exchange Act, a "short-swing profits" rule that requires owners of more than 10% of a class of publicly traded equity securities to

disgorge any profits from trading in the issuer's equity securities within a period of less than six months.  On June 29, 2026, Avis filed a heavily redacted copy of a complaint, originally filed under seal, against Pentwater, Halbower, and a series of apparently related entities, setting forth Avis's allegations.

6.     As a result of Defendants' market-manipulation scheme, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 9(a) and 10(b) of the Exchange Act (15 U.S.C. §§ 15 U.S.C. § 78i and 78j(b)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Defendant Pentwater is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

10.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

4

## PARTIES

11.    Plaintiff, as set forth in the attached Certification, acquired Avis securities during during the Class Period and suffered damages.

12.    Defendant Pentwater is a private investment firm that describes itself as "focused on investing in event driven strategies."  Pentwater is a Delaware limited partnership headquartered in Naples, Florida.

13.    Defendant Halbower is Pentwater's Founder, CEO, and CIO.

14.    Pentwater and Halbower are collectively referred to herein as "Defendants."

## RELEVANT NON-PARTIES

15.    Non-Party Avis is a Delaware corporation headquartered in Parsippany, New Jersey.  At all relevant times the Company's common stock has traded on the Nasdaq under the ticker symbol "CAR."

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Avis provides car and truck rentals, car sharing, and ancillary products and services to business and consumers through its Avis, Budget, and Zipcar brands.

**Pentwater's Growing Stake in Avis**

17.     The Class Period begins on February 20, 2026, the date on which Pentwater became the owner of 10% of Avis's stock, as disclosed in a Form 3 filed with the SEC on February 24, 2026.  The Form 3 disclosed that Pentwater was the beneficial owner of 3,562,100 shares of Avis common stock.

18.     By virtue of its 10% stake in Avis, Pentwater qualified as a corporate insider and was thereby subject to Section 16(b) of the Exchange Act. Specifically, Section 16(b) requires any investor owning 10% or more of a company's stock to disgorge any profits made from both buying and selling their stock within a six-month period – a strict liability "short-swing profit" rule intended to deter insiders from trading on non-public information.

19.     Pentwater and its CEO/CIO Halbower continued to acquire Avis stock, and on March 6, 2026, Defendants disclosed in an SEC filing on Schedule 13G that Pentwater and Halbower individually each owned 4,327,200 shares of Avis stock, each comprising 12.3% of the Company's outstanding shares.  Each Defendant also disclosed that their stake in Avis included "254,700 shares of Common Stock . . . issuable upon exercise of call options."

20.     Pentwater's aggressive purchasing of millions of shares of Avis stock over a period of mere months steadily drove up Avis's share price.  On March 23, 2026, Avis's stock price began what would become an almost

uninterrupted climb over the next four weeks.  On that date, the Company's stock price rose $7.38 per share, or 7.39%, to close at $107.28 per share, on a higher-than-average trading volume.  Over the following trading sessions, Avis's stock price continued to climb.

21.    Meanwhile, Pentwater and Halbower continued to purchase Avis shares.  On April 7, 2026, Defendants disclosed in an SEC filing that each had increased their holdings of Avis stock to 7,824,100 shares, each comprising 22.2% of the Company's stock.  Each Defendant further disclosed that their financial stake in Avis now also included "775,800 shares of Common Stock issuable upon exercise of call options."

22.    Avis's stock price continued to climb as its shares traded frenetically over the following weeks.  On March 20, 2026, Avis's stock price closed at $99.90 per share.  Four weeks later, on April 21, 2026, its stock price closed at $713.97 per share, representing an increase of over *614%* during that period.

23.    Meanwhile, even as Avis's share price surged, Avis was the subject of significant short interest at all relevant times – that is, numerous investors had taken short positions with respect to Avis's stock price performance.  Specifically, these short sellers were borrowing and then selling shares of Avis stock while its price remained high, in the expectation that the Company's stock price would

fall, enabling them to repurchase their borrowed Avis shares on the cheap and pocket the difference between their high sale and low purchase prices.

24.    Pentwater's aggressive purchasing of Avis shares, which continued to drive Avis's stock price higher, coupled with the extent of short interest created a classic "short squeeze" dynamic, in which the numerous short sellers of Avis stock were forced to buy shares at increasingly high prices to cover their positions as the Company's share price refused to fall.  In turn, the buying frenzy by short sellers who needed to cover their positions only drove Avis's share price even higher.  This short squeeze obviously benefited Pentwater, as it massively inflated the value of its stake in Avis over the course of the Class Period.

### Pentwater Dumps Its Shares; Avis's Share Price Collapses

25.    After weeks of nearly uninterrupted upward momentum, Avis's stock price finally peaked at $765.94 per share during intraday trading on April 21, 2026, before closing at $713.97 per share at the end of that day's trading session.

26.    Then, on April 22, 2026, Avis's share price plummeted by *$270.03* per share, or *37.82%*, in a single trading session, to close at $443.94 per share on April 22, 2026.  Over the following trading sessions, Avis's share price only continued its slide, ultimately falling by a total of *$531.97* per share from its April 22 closing price, or *74.51%*, before closing at $182.005 per share on April 28, 2026.

27.     On April 29, 2026, Avis conducted its earnings call for the fourth

quarter of 2026.  During the call, CEO Bian Choi began his prepared remarks by

revealing the role that Pentwater had played in obliterating Avis's market

capitalization:

> Let's start with what's well understood.  Our second largest shareholder, Pentwater Capital, who filed as a 9% owner of our company as of December 31, 2025, crossed the 10% ownership threshold on February 20 and became a Section 16 insider.  On that day, Pentwater disclosed they held an economic interest of 39% of our company through stock and cash settled swaps.  By March, they disclosed that economic interest increased to 51%.  So, in the span of a month, Pentwater's public filings showed their economic interest increased substantially.  We believe that this significant increase in ownership, combined with the high short interest in our name, results in a short squeeze.  That much is well understood.
>
> *Here's what we're just absorbing now.  After market closed yesterday, Pentwater disclosed the sale of $4.3 million shares for gross proceeds of $1.75 billion on April 22 and April 23.  Given the quantum of shares sold in such a short span of time, our stock price experienced a significant decline.*[1]  It is important to note that Avis has not bought or sold a share since 2023.  Our largest shareholder, SRS, has not bought or sold a share since 2023.  *So it seems the only insider active during this period of excess volatility was Pentwater Capital.*
>
> Pentwater has acknowledged that its sale of Avis stock, at least in part, was violative of the SEC Section 16 short swing profit rule.  *Avis has requested Pentwater furnish it all relevant information concerning the trades and Avis will aggressively pursue all rights on behalf of our stockholders.*

---

[1] All emphases herein are added unless otherwise noted.

28.     Then, on June 22, 2026, Avis filed a Current Report with the SEC on Form 8-K, which disclosed in relevant part:

> On June 19, 2026, Avis Budget Group, Inc. (the "Company") entered into a Settlement and Release Agreement (the "Settlement Agreement") with Pentwater Capital Management LP and certain affiliated persons ("Pentwater") to settle its pending lawsuit against Pentwater for the recovery of short-swing profits under Section 16(b) of the Securities Exchange Act of 1934 (the "Section 16(b) Action"). Under the Settlement Agreement, the settlement amount is ***$650,000,000 in cash*** (the "Settlement Amount"). The Settlement Agreement and payment to the Company of the Settlement Amount is subject to court approval, including the issuance of an order approving the terms of the settlement agreement and making a finding that, among other things, the Company has diligently pursued the claims raised in the Section 16(b) Action and that the Settlement Amount is fair, reasonable and adequate, and other customary conditions.

29.     On June 29, 2026, Avis filed a heavily redacted copy of a complaint, originally filed under seal on June 16, 2026, against Pentwater, Halbower, and a series of apparently related entities, setting forth Avis's allegations Section 16(b) allegations.

30.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

31.     The allegations set forth above give rise to the strong inference that Defendants knowingly, or at least recklessly, engaged in a pump-and-dump

scheme that was designed to, and in fact did, deceive, manipulate, and defraud investors in Avis stock.  Defendants' trading during the Class Period is highly suspicious and gives rise to the strong inference that they deliberately manipulated the price of Avis stock for their own benefit at the expense of innocent market participants.  As discussed above, Pentwater and Halbower steadily accumulated a massive equity stake in Avis over a period of months, notwithstanding the Company's weak underlying business fundamentals, while driving up its stock price by buying heavily in the midst of a short-squeeze dynamic.  Then, only after Avis's stock price peaked at $847.70 per share on April 21, 2026, Pentwater dumped 4.3 million shares of Avis stock into the market between April 22 and 23, for $1.75 billion in proceeds and causing the Company's share price to plummet.  Pentwater being as sophisticated investment fund, the most reasonable inference is that Pentwater and its CEO/CIO Halbower knew precisely what they were doing and deliberately manipulated the price of Avis stock for their own benefit.

32.     Viewed collectively, the allegations in this Complaint yield a strong inference that Defendants either knew or recklessly disregarded the fact that they placed and executed trades that were intended to, and in fact did, unlawfully manipulate the market for Avis securities in violation of federal securities laws and applicable industry regulations.

11

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Avis securities during the Class Period (the "Class").  Excluded from the Class are Defendants herein, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Avis securities were actively traded on the Nasdaq.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Avis or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

12

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether trades placed in securities exchanges by Defendants were manipulative or deceptive;

- whether Defendants' acts were committed with scienter;

- whether Defendants' violations of federal securities laws caused the Class's losses; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the

wrongs done to them.  There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Avis securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Nasdaq and was covered by multiple analysts; and

- Avis regularly communicated with investors via established market communication mechanisms, including through regular dissemination of press release on the national circuits of major newswire services, the Internet, and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

40.     The market for Avis shares promptly digested current information regarding Avis from all publicly available sources and reflected such information in the price of Avis shares.  Under the circumstances, all purchasers of Avis shares during the Class Period who relied upon the integrity of the market price of Avis shares, including Plaintiff, suffered similar injury through their purchase of Avis shares at artificial prices, and a presumption of reliance under the fraud-on-the-market doctrine applies.

## COUNT I
### (Violations of Section 9(a) of the Exchange Act Against All Defendants)

41.    Plaintiff incorporates by reference the allegations set forth in ¶¶ 2-6 and 17-32.

42.    This Count is asserted against Defendants pursuant to Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i.

43.    Based upon the conduct described above, Defendants' manipulative scheme violated Section 9(a)(2) of the Exchange Act, which makes it unlawful to engage in a series of manipulative transactions "in any security . . . creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others."

44.    Defendants directly used the mails, or instrumentalities of interstate commerce, or a facility of a national securities exchange, to effect – alone or with one or more other person – a series of transactions in Avis shares that raised the price of such shares for the purpose of inducing the purchases of such shares by others.  Defendants accomplished this by means of a pump-and-dump scheme, which artificially affected the prices of Avis shares that Defendants sold for value.

45.     Defendants' conscious misbehavior or recklessness artificially affected the price of Avis shares that Plaintiff purchased.  Defendants' conscious misbehavior or recklessness thus caused injury to Plaintiff.

46.     Pursuant to Section 9(e), 15 U.S.C. § 78i(e), Plaintiff and the members of the Class who purchased or otherwise acquired Avis securities at prices affected by Defendants' manipulative conduct were injured and have a private right of action to recover the damages sustained as a result.

47.     Plaintiff and the Class seek damages as provided by law, together with interest, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

48.     As a direct and proximate result of Defendants' culpable conduct, Plaintiff and other members of the Class suffered damages in connection with their transactions in Avis securities during the Class Period.

## COUNT II
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49.     Plaintiff incorporates by reference the allegations set forth in ¶¶ 2-6 and 17-32.

50.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants used the means and instrumentalities of interstate commerce, the U.S. mails, and the facilities of a national securities exchange to engage in the manipulative and deceptive trading scheme alleged herein.  Accordingly, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed the device, scheme, or artifice to defraud alleged herein; (ii) made materially false or misleading statements and omissions of material fact, including regarding market supply and demand for Avis securities, alleged herein; and (iii) engaged in the acts, practices, and courses of business alleged herein, which operated as a fraud or deceit upon Plaintiff and upon members of the Class.  The manipulative and deceptive conduct, and misleading statements and omissions complained of herein, were designed to, and did: (i) deceive the investing public, including Plaintiff; (ii) cause the market price of Avis shares to trade above its true value; and (iii) cause Plaintiff as well as other class members to purchase or acquire Avis shares at artificially inflated prices that did not reflect the stock's true value during the Class Period.  In furtherance of their unlawful scheme, plan, or course of conduct, Defendants took the actions alleged herein.

52.     Defendants acted with knowledge or a reckless disregard for the truth of the trading activities alleged herein in that they failed to monitor and/or prevent these activities even though such activities were readily apparent to

17

them, if not known.  Defendants' actions or inactions were made knowingly and/or recklessly for the purpose and effect of concealing the truth regarding Avis's share price action, and the supply and demand for Avis securities, thereby supporting the artificially inflated price of Avis stock.

53.     Defendants are liable for orchestrating the pump-and-dump scheme alleged herein, which operated as a scheme to manipulate the market price of shares of Avis stock.

54.     As set forth more fully above, strong circumstantial evidence exists that Defendants' conduct reflects the intentional or reckless nature of their unlawful scheme and course of conduct to defraud the market for Avis securities.

55.     Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder are designed to ensure that Avis securities trade in a fair and orderly market free of manipulation.  Defendants' scheme to manipulate the price of Avis stock was structured in a manner that concealed their unlawful intentions and made it extremely difficult for a reasonably diligent market participant – like Plaintiff – to discover the operative facts constituting the market manipulation scheme, much less the identities of the perpetrators of these schemes.

56.     During the Class Period, despite Plaintiff's diligence, he did not discover – nor could a reasonably diligent plaintiff have discovered – the facts

18

constituting the market manipulation claims or the identities of the perpetrators of these market manipulation schemes.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in that Plaintiff purchased Avis shares at manipulated prices, in reliance on an assumption of a market free of manipulation.

58.     Defendants, individually and in concert, directly or indirectly, by the use of means and instrumentalities of interstate commerce, the U.S. mails, and the facilities of a national securities exchange: (i) employed devices, schemes, and artifices to defraud; and (ii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the purchasers of Avis's shares in an effort to maintain artificially high market prices for Avis shares, in violation of § 10(b) and Rule 10b-5.  Defendants are alleged as primary participants in the wrongful conduct alleged herein.

59.     By virtue of the foregoing, Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  As a direct and proximate results of Defendants' wrongful conduct, Plaintiff and other class members suffered damages in connection with their transactions in the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

19

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 31, 2026                              Respectfully submitted,

                                                   MILLER SHAH LLP

                                                   */s/ Nathan C. Zipperian*
                                                   Nathan C. Zipperian
                                                   Jayne A. Goldstein
                                                   2103 N. Commerce Parkway
                                                   Ft. Lauderdale, FL 33326
                                                   Telephone: (954) 515-0123
                                                   Facsimile: (866) 300-7367
                                                   nczipperian@millershah.com
                                                   jagoldstein@millershah.com

20

POMERANTZ LLP
Jeremy A. Lieberman
Lead Counsel
(*pro hac vice* forthcoming)
J. Alexander Hood II
(*pro hac vice* forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

NEMATZADEH PLLC
Justin S. Nematzadeh
(*pro hac vice* forthcoming)
1129 Northern Boulevard, Suite 457
Manhasset, New York 11030
Telephone: (646) 799-6729
jsn@nematlawyers.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Khashayar Hakimian_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint on behalf of investors in Avis Budget Group, Inc. ("Avis") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Avis securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Avis securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. The attached sheet lists all of my transactions in Avis securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed    7/29/2026
           **(Date)**

                   **(Signature)**

       Khashayar Hakimian
            **(Type or Print Name)**

**Avis Budget Group, Inc. (CAR)**                                      **Khashayar Hakimian**

**List of Purchases/Acquisitions and Sales**

| Transaction Type | Security Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Purchase/Acquisition | Common Stock | 4/7/2026 | 1,000 | $240.5000 |
| Purchase/Acquisition | Common Stock | 4/8/2026 | 1,000 | $229.0000 |
| Purchase/Acquisition | Common Stock | 4/8/2026 | 2,000 | $235.0000 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 669 | $300.9500 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 500 | $300.8100 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 700 | $300.9900 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 500 | $300.8200 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 500 | $301.3400 |
| Purchase/Acquisition | Common Stock | 4/10/2026 | 131 | $299.9000 |
| Purchase/Acquisition | Common Stock | 4/14/2026 | 5,400 | $394.3900 |
| Purchase/Acquisition | Common Stock | 4/17/2026 | 600 | $493.0000 |
| Purchase/Acquisition | Common Stock | 4/20/2026 | 2,500 | $581.0000 |
| Sale | Common Stock | 4/7/2026 | (2,000) | $251.3500 |
| Sale | Common Stock | 4/7/2026 | (2,000) | $248.3000 |
| Sale | Common Stock | 4/7/2026 | (1,000) | $246.1500 |
| Sale | Common Stock | 4/7/2026 | (500) | $244.0000 |
| Sale | Common Stock | 4/7/2026 | (500) | $240.1500 |
| Sale | Common Stock | 4/7/2026 | (500) | $238.0000 |
| Sale | Common Stock | 4/7/2026 | (200) | $235.2000 |
| Sale | Common Stock | 4/7/2026 | (300) | $231.0000 |
| Sale | Common Stock | 4/7/2026 | (1,000) | $226.0000 |
| Sale | Common Stock | 4/13/2026 | (5,000) | $250.0000 |
| Sale | Common Stock | 4/17/2026 | (2,500) | $350.0000 |
| | | | | |
| Purchase/Acquisition | P 20260529 300 | 4/13/2026 | 2 | $53.0000 |
| Purchase/Acquisition | C 20260417 350 | 4/14/2026 | 5 | $26.0000 |
| Purchase/Acquisition | P 20260529 300 | 4/16/2026 | 1 | $42.0000 |
| Purchase/Acquisition | P 20260529 300 | 4/16/2026 | 3 | $42.0000 |
| Purchase/Acquisition | C 20260424 725 | 4/22/2026 | 10 | $19.0000 |
| Sale | C 20260410 250 | 4/7/2026 | (10) | $19.5700 |
| Sale | C 20260410 250 | 4/7/2026 | (10) | $17.0000 |
| Sale | C 20260410 250 | 4/7/2026 | (10) | $15.0000 |
| Sale | C 20260410 250 | 4/7/2026 | (10) | $11.0000 |
| Sale | C 20260410 250 | 4/7/2026 | (10) | $8.0000 |
| Sale | C 20260417 350 | 4/13/2026 | (5) | $42.0000 |
| Sale | C 20260417 350 | 4/13/2026 | (5) | $36.0000 |
| Sale | C 20260417 350 | 4/13/2026 | (5) | $30.0000 |
| Sale | C 20260417 350 | 4/13/2026 | (5) | $25.0000 |
| Sale | C 20260417 350 | 4/13/2026 | (10) | $16.0000 |
| Sale | C 20260424 725 | 4/20/2026 | (5) | $30.0000 |
| Sale | C 20260424 725 | 4/21/2026 | (5) | $66.0000 |
| Sale | P 20260529 300 | 4/23/2026 | (6) | $58.0000 |